Judge Berman

'08 CIV 6408

Andrew S. Langsam
Colleen E. Parker
PRYOR CASHMAN LLP
410 Park Avenue, 10th Floor
New York, New York 10022
(212) 421-4100

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK



BATTAT INCORPORATED,

Plaintiff,

-against-

LAKESHORE EQUIPMENT CO., d/b/a
LAKESHORE LEARNING MATERIALS

Defendant.

08 Civ. _____

**COMPLAINT**

Plaintiff Battat Incorporated ("Plaintiff" or "Battat"), by its attorneys, Pryor Cashman

LLP, as and for its Complaint against defendant Lakeshore Equipment Co., d/b/a Lakeshore

Learning Materials ("Defendant" or "Lakeshore"), alleges as follows:

**NATURE OF ACTION**

1.      In this action for trademark infringement, Battat, who designs, manufactures,

imports, distributes and sells children's toys and <u>sells</u> the same under the famous trademark

BRISTLE BLOCKS, seeks to restrain and enjoin Lakeshore from manufacturing, selling,

importing, offering for sale, delivering or otherwise distributing children's toy products under the

confusingly similar name, BRISTLE BUILDERS (including through Lakeshore's website

www.lakeshorelearning.com).  Additionally, Battat seeks a judgment that such use willfully

infringes Battat's famous trademark, BRISTLE BLOCKS, entitling Battat to an award of treble

damages, Lakeshore's ill gotten gains, Battat's costs and reasonable attorney's fees.

738534

## THE PARTIES

2.      Battat is a Delaware corporation authorized to transact business in the State of New York, with an address at 1560 Military Turnpike, Plattsburgh, New York 12901.  Battat develops, designs, manufactures, distributes, markets, offers for sale and sells toys and related products within the State of New York, nationwide and internationally.  Battat is the owner of the mark BRISTLE BLOCKS and uses it in connection with children's toys, specifically building toys.

3.      Upon information and belief, Lakeshore is a California corporation with an office located at 2695 E Dominguez Street, Carson, California, 90810.  Upon information and belief, Lakeshore is engaged in the production, manufacture, distribution and sale of toys in the State of New York and nationwide.  Lakeshore overtly sells its toys under the trademark BRISTLE BUILDERS.

## JURISDICTION AND VENUE

4.      This action arises pursuant to, <u>inter alia</u>, the Lanham Act of 1946, 15 U.S.C. § 1051 <u>et. seq.</u> (the "Lanham Act") and the common law of the State of New York.

5.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338, 2201 and 2202.

6.      Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b) and (c).

7.      Upon information and belief, Lakeshore transacts business in this district giving rise to the claims asserted in this Complaint and has sold and continues to sell infringing products under its trademark BRISTLE BUILDERS within this judicial district.

2

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF

### A.    BATTAT'S FAMOUS BRISTLE BLOCKS MARK

8.    Battat has been in the toy design, manufacturing and selling business for over a century.  Founded in 1897, Battat prides itself on being a family-based company that values quality, safety, design, reliability and value above all else.  This attention to detail has consistently earned the raves- not to mention the trust- of parents and consumers worldwide. Battat is well established in the industry as a company that produces a variety of high quality children's toys.

9.    Battat has achieved a prominent reputation with the consuming public through its wide variety of children's products including art sets, building toys, plush animals, posable dolls and accessories, plastic movable cars and trucks, musical instruments and much more.

10.    Battat is primarily engaged in creating, designing, engineering, producing and distributing proprietary, third-party products as well as developing and producing "own brand" products.  It is responsible for a wide range of popular and renown brands of toys such as PARENTS®, PUCCI PUPS®, BANBURY HORSES®, and OUR GENERATION® -- not to mention, BATTAT®.

11.    One of Battat's popular and sought after products is its BRISTLE BLOCK building toys.  Battat's toys, sold under the BRISTLE BLOCKS mark, include building components, modeled plastic toy figurines and plastic toy construction sets comprised of construction blocks.  Battat's BRISTLE BLOCKS toys and accessories have been distributed for sale in the United States through a variety of retailers including:  Defendant Lakeshore, US Toys, Kaplan Schools Supplies, COSTCO, MARMAX and other specialty toy stores.

12.    Battat has continuously used the mark BRISTLE BLOCKS in commerce in connection with its toy products and the marketing of those products since at least as early as October 1, 1996.

13.    As a result of Battat's continuous and extensive use of the trademark BRISTLE BLOCKS, the consuming public has come to associate the BRISTLE BLOCKS mark solely with Battat and its longstanding line of quality children's toys.

14.    Battat has achieved substantial commercial success through the sale of its products under the BRISTLE BLOCKS mark.   Indeed, from 2003-2007 alone, Battat's sales from products under the BRISTLE BLOCKS were approximately $2.3 million.

15.    As a result of Battat's exacting standards, impressive sales and popularity of the BRISTLE BLOCKS brand of products, the mark BRISTLE BLOCKS has come to symbolize Battat as the source of high quality toy products in the eyes of the consuming public and Battat has attained enormous goodwill throughout the United States and specifically within this judicial district as a consequence of sales of BRISTLE BLOCKS products.   In fact, the BRISTLE BLOCKS mark has become famous.

16.    Battat's predecessor in interest, Adica Pongo, Inc., registered BRISTLE BLOCKS with the United States Patent & Trademark Office (the "PTO") on October 7, 1997 (Reg. No. 2,103,773).   In 2000, Adica Pongo, Inc. merged into Battat, whereby Battat acquired ownership of all of Adica Pongo's intellectual property and the goodwill associated therewith.   This registration for BRISTLE BLOCKS was inadvertently cancelled in July 2004; however, as stated above, Battat has continuously used the BRISTLE BLOCKS mark on children's building toys, in interstate commerce, since at least as early as October 1, 1996.

17.     On February 10, 2006, Battat filed a new United States trademark application seeking to re-register the BRISTLE BLOCKS mark (App. Ser. No. 78812307).

18.     Although BRISTLE BLOCKS is clearly a distinctive mark, it has also acquired secondary meaning in the marketplace attributable to Battat's longstanding use and impressive sales. As such, it is entitled to and deserving of protection against the unauthorized use of identical and confusingly similar marks for related and similar goods.

19.     The widespread commercial success of the toy products sold under the BRISTLE BLOCKS mark has garnered substantial publicity. As a result of this success, Battat recently entered into a contractual arrangement whereby it has agreed to produce and to sell its BRISTLE BLOCKS line of products exclusively in cooperation with the Parents® brand (owned by Meredith Corporation).

**B.     LAKESHORE'S INFRINGING USE OF THE TERM BRISTLE**

20.     Lakeshore, upon information and belief, sells products, primarily toys and educational products, to educational institutions, educators and parents through catalogs and its own retail stores.

21.     Lakeshore was intimately familiar with Battat and its BRISTLE BLOCKS mark and line of products because Battat was, on information and belief, the sole and exclusive manufacturer and supplier to Lakeshore of these products from at least as early as 2000 to 2007.

22.     In or about March 2006, Battat advised Lakeshore that in or about 2007, it could no longer offer any toys under the BRISTLE BLOCKS mark to Lakeshore and suggested an alternative mark of KRINKLES for Lakeshore's purchases and resale of Battat's building toys.

23.    In or about July 2006, Lakeshore advised Battat that it did not want to buy or resell toys bought from Battat under the KRINKLES mark.  Accordingly, Battat ceased selling its BRISTLE BLOCKS toys to Lakeshore in 2007.

24.    Lakeshore is not authorized to make, import, nor sell Battat's products under the BRISTLE BLOCKS mark or any mark substantially similar to Battat's mark.

25.    Upon information and belief, in December 2006, Lakeshore filed a trademark application for BRISTLE BUILDERS based upon its expressed intent to adopt and to use the mark in commerce in connection with building toys.  (U.S. Ser No. 77060631 hereafter "the Application").

26.    BRISTLE BUILDERS is confusingly similar to Battat's famous BRISTLE BLOCKS trademark.  Indeed, Lakeshore appropriated the dominant portion of Battat's mark- BRISTLE- for use on or in connection with the exact same goods sold by Battat under its BRISTLE BLOCKS mark- building toys.

27.    In April 2007, the PTO notified Lakeshore that it would likely suspend its application for BRISTLE BUILDERS pending resolution of Battat's earlier filed trademark re-application for BRISTLE BLOCKS (the "Notice").

28.    Though as a customer of Battat for many years, Lakeshore was aware of Battat's longstanding use in commerce of the mark BRISTLE BLOCKS as a trademark on its toy products, upon information and belief, Lakeshore first learned of Battat's pending trademark re-application, including Battat's asserted date of first use, thorough the PTO Notice.

29.    In May 2007, Lakeshore filed an amendment to its Application originally based on its future intention to adopt and use the mark and now alleged that it was already using the mark in commerce.  In contrast to its prior claim of its future intention to use the BRISTLE

BUILDERS mark on toys, Lakeshore alleged it had been using the BRISTLE BUILDERS mark

prior to Battat — notwithstanding the fact that Battat was Lakeshore's exclusive supplier of the

BRISTLE BLOCKS products.

30.    In July 2007, Lakeshore filed an opposition to Battat's application for registration

of BRISTLE BLOCKS, claiming prior use of the BRISTLE BUILDERS mark by Lakeshore.

31.    The opposition is pending.

32.    Upon information and belief, Lakeshore is now selling products, specifically

children's building toys, under the brand BRISTLE BUILDERS, which is confusingly similar to

and where the dominant word is identical to Battat's BRISTLE BLOCKS trademark.  To make

matters worse, Lakeshore is using its confusingly similar mark in connection with the exact same

type of goods that are sold by Battat under its BRISTLE BLOCKS mark and which were sold to

Lakeshore by Battat.

33.    It is clear that Lakeshore deliberately appropriated the dominant and most

memorable portion of Battat's mark – i.e., it selected a mark with BRISTLE as the leading

word– in an effort to capitalize and trade on the goodwill associated with Battat's BRISTLE

BLOCKS marks and goods sold in connection therewith.

34.    Since Lakeshore is not authorized to sell Battat's BRISTLE BLOCKS products,

Lakeshore's sale of the exact same type of products as Battat under the BRISTLE BUILDERS

mark will cause consumer confusion.  This is especially so considering the overlap in consumers,

namely, parents, educators and educational institutions and the virtually identical price points of

the parties' respective toys.  Consumers are likely to believe that products under the BRISTLE

BUILDERS mark are affiliated with Battat's BRISTLE BLOCKS products when no such

affiliation exists.  This is damaging to Battat's stellar reputation and dilutes the distinctiveness of its famous mark.

## FIRST CLAIM FOR RELIEF

**Willful Trademark Infringement Pursuant to
Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)**

**Injunctive Relief**

35.    Battat repeats and realleges the allegations contained in paragraphs 1 though 34, as if fully set forth herein.

36.    Since at least as early as 1996, Battat has continuously used the inherently distinctive BRISTLE BLOCKS mark in interstate commerce to identify its toy construction units, modeled plastic toy figurines and plastic toy construction sets composed of construction units.  Through such use, Battat has forged a strong association in the minds of consumers between itself and its BRISTLE BLOCKS mark as used in connection with marketing and sales on such toys and related goods.

37.    Lakeshore purchased BRISTLE BLOCKS toys from Battat for its resale to others for at least six years, until 2007 when Battat refused to continue to supply Lakshore with any additional  BRISTLE BLOCKS products.

38.    Lakeshore's recent adoption and use of the BRISTLE BUILDERS mark, a mark that is virtually identical to and likely to cause confusion with Battat's BRISTLE BLOCKS mark, in connection with the manufacture and sale of children's toys – in fact, the exact same type of toys manufactured and sold by Battat since 1996- to the same or similar consumers at virtually the same price points constitutes false designation of origin, false advertising and a false representation that Lakeshore's BRISTLE BUILDERS toys are sponsored, authorized, licensed

8

by or otherwise affiliated or connected with Battat's BRISTLE BLOCKS toys. This is especially so considering that Battat was Lakeshore's exclusive supplier of these items for many years.

39.    Upon information and belief, Lakeshore's activities have already created consumer confusion, mistake and deception, and are likely to continue to cause consumers to believe that the children's toys sold by Lakeshore under the BRISTLE BUILDERS mark are sponsored, authorized, licensed by or otherwise affiliated or connected with Battat and their children's toy products sold under the BRISTLE BLOCKS mark, all to Battat's detriment.

40.    Upon information and belief, Lakeshore's acts are deliberate and are intended to confuse consumers and the public as to the source of Lakeshore's products, to reap the benefit of the goodwill associated with Battat and its BRISTLE BLOCKS products, and to injure Battat by diverting trade and customers from purchasing Battat's BRISTLE BLOCKS products.

41.    Lakeshore's use of the BRISTLE BUILDERS mark violates Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

42.    As a direct and proximate result of Lakeshore's willful and unlawful conduct, Battat has been injured and will continue to suffer injury to its business and reputation unless Lakeshore is restrained by this Court from infringing upon Battat's BRISTLE BLOCKS mark.

43.    Battat is being irreparably harmed by Lakeshore's continuing violations of § 43(a) of the Lanham Act, and therefore has no adequate remedy at law.

## SECOND CLAIM FOR RELIEF

### Willful Trademark Infringement Pursuant to
### Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)

### Damages

44.    Battat repeats and realleges the allegations contained in paragraphs 1 through 42 as if fully set forth herein.

45.    By reason of Lakeshore's actions, Battat has been damaged and is entitled to recover from Lakeshore all damages that Battat has sustained and will sustain as a result of such infringing acts, and all gains, profits and advantages obtained by Lakeshore as a result thereof, in an amount not yet known, but which should be trebled due to Lakeshore's willful infringement, plus the costs of this action, including reasonable attorney's fees, pursuant to 15 U.S.C § 1117(a).

**WHEREFORE**, Battat prays for judgment against Lakeshore as follows:

(A) on the FIRST Claim for Relief:

(i)    that Lakeshore, its agents, servants, employees, associates, and attorneys, and all persons acting by, through, or in active concert with any of them, be preliminarily and permanently enjoined from infringing Battat's BRISTLE BLOCKS trademark; and

(ii)    that Lakeshore, its agents, servants, employees, associates, and attorneys, and all persons acting by, through, or in active concert with any of them, be preliminarily and permanently enjoined from use of the BRISTLE BUILDERS trademark.

(B) on the SECOND Claim for Relief:

(i) damages in an amount to be determined at trial, but believed to be in excess of $100,000;

(ii) that Battat recover from Lakeshore three times the amount of Lakeshore's profits or Battat's damages, whichever is greater, for willful infringement and dilution pursuant to 15 U.S.C. § 1117(b);

(C) that Battat be awarded all the costs, disbursements and reasonable attorney's fees incurred by it in bringing this action, pursuant to 15 U.S.C. § 1117; and

(D) awarding such other relief as this Court may deem just and proper.

## Jury Demand

Battat hereby demands a trial by jury.

Dated: July 17, 2008        PRYOR CASHMAN LLP
       New York, New York        Attorneys for Plaintiff

By:_____
          Andrew S. Langsam
          Colleen E. Parker
          410 Park Avenue, 10th Floor
          New York, New York 10022
          (212) 421-4100